Summit County Court of Common Pleas— April Term 1896.

STATE OF OHIO on relation of Frederick Schnee, v. THE BOARD OF EDUCATION OF CUYAHOGA FALLS, OHIO, and CHARLES H. HOWLAND, President, M'CON MOORE, Clerk, and M. D. CARD, Treasurer of said Board of Education.

The board of education of Cuyahoga Falls, consisting of six members, failed to elect a superintendent of schools of that district, by reason of an equal division of the members of the board as to the re-employment of the former superintendent, and in consequence of such division, no appointment or election of a superintendent was made until after the commencement of the schools in September, 1895, when the county commissioners of Summit county, being duly advised, at a regular meeting appointed a superintendent of schools for that district, under and by virtue of section 3969 of the Revised Statutes of Ohio.

Held: That such action of the county commissioners was legal, and that the superintendent so appointed held his office as superintendent the same as if appointed by the board of education, and was entitled to receive his pay.

And that where the treasurer of the school district refuses to pay an order for his salary, mandamus is the proper remedy.

(Decided July 30, 1896.)

KOHLER, J.

The petition in this case presents, in substance, the following state of facts: Plaintiff represents that on the 4th day of September, 1895, he was appointed and elected by the board of county commissioners of Summit county, superintendent of the public schools of the village of Cuyahoga Falls; that his salary was fixed by the commissioners at $1,100.00 per year payable in ten monthly payments of $110 each; that his election was made under and by virtue of section 3969 of the Revised Statutes of Ohio, and by reason of the failure and neglect on the part of the board of education of the village district of Cuyahoga Falls, to elect a competent superintendent of said schools. He avers that he entered upon the discharge of his duties as such superintendent, assumed charg of the schools of said village district, and ever since his said appointment has given his time to such superintendence and teaching, and that he has performed all the duties required of him as a superintendent and teacher of said schools. He avers that on the 28th day of September, 1895, there was due him for his services as superintendent, the sum of $110, and that the board of education refused to authorize the payment of said sum due him; that the president of the board, Charles H. Howland, and McCon Moore, clerk of the board, refused to issue an order upon the treasurer of said board, for said sum of $110, or any other sum, and that the treasurer refused to pay any sum whatever for his service. He further alleges that on the 28th day of October, 1895, there became due him from the board of education, the further sum of $110, all of which the said board refused to pay, and refused to issue any warrant whatever upon the treasurer for his services. He avers that he has filed with the clerk of the board of education, a copy of a legal certificate of his qualification, covering the entire time of his service as such superintendent and teacher, and the statement of the branches taught, and that he had performed all other duties required of him by law and by said board of education.

He avers that on the 13th of November, 1895, he presented to the treasurer of the board, M. D. Card, an order from the board of county commissioners of said Summit county, signed by the members of said board, commanding said treasurer to pay him the sum of $220, for his services as superintendent, but the said treasurer refused to obey said order, and refused to pay plaintiff the

amount so due him, or any part of it. He avers that there was, on the 4th day of September, 1895, and ever since has been in the possession of said treasurer, funds more than sufficient to pay the plaintiff the amount due him, and that said funds were duly levied and collected from the tax-payers for the express purpose of paying the expenses of the public schools of said village, and to compensate the plaintiff and other teachers of said board of education. He avers that he is without remedy in the premises, except such as may be afforded by this court, in the issuing of a writ of mandamus, and he asks judgment that the proper writ of mandamus may be issued against the board of education of Cuyahoga Falls, and Charles H. Howland, president of said board, and McCon Moore, clerk of said board, and M. D. Card, treasurer of said board; that the board of education may be commanded to pass an order directing its said president and clerk to issue an order directing the said treasurer to pay the said sum of $220, the amount due the plaintiff out of the funds of said board of education, and now in its possession, and that the treasurer be commanded to pay the said order to the plaintiff.

To this petition, the board of education of the village of Cuyahoga Falls, and Charles H. Howland, president of the board, and M. D. Card, treasurer thereof, have filed an answer. The answer admits that the said Howland and Card are respectively president and treasurer of said board of education, and that the relator filed with the clerk of said board, a certificate as teacher; they admit that the board of county commissioners of Summit county, drew an order upon the treasurer of the board of education, and that the treasurer refused to pay the same. They aver that the said order so issued by the county commissioners was void and without authority at law. They further deny each and every other allegation and statement in the petition contained.

It is further averred that the board of education consists of six members who have been duly elected and qualified; that the said board had exclusive authority over said schools, with the exclusive power to appoint teachers, agents, and other officers, as in their judgment the needs of said schools required; that in the exercise of such power and authority, the members of the said board of education of right are wholly and solely controlled by their own honest judgment and discretion, and are free from all control, influence, or coercion from any board, court, body corporate or otherwise. It is further averred that at a meeting of the said board, held in the month of May, 1895, motion was made and seconded, that the said Schnee's application as superintendent be received, and that he be appointed superintendent of said schools for one year. The motion being duly considered, was lost. It is further averred that at a subsequent meeting, relator again made an application for the position of superintendent of schools, and a motion was duly made and seconded that the re-

lator's application be received, and that he be appointed superintendent for one year, which was also lost.

They further aver that on the 3rd day of September, 1895, the public schools of said village opened for the school year, and that the board had done all things required by law to be done up to that time; they duly estimated and certified the levy for contingent fund as required by law, and had provided sufficient school privileges, etc., and provided for the continuance of all the schools in said village for the length of time required by law, and had provided for each school in said village an equitable share of school advantages, as required by law, and sufficient teachers for all the schools under its control. They further aver that on the said 3rd day of September, 1895, it was not necessary, in the judgment of said board of education, to have a superintendent of public schools of said village, and that the relator with full knowledge of the facts, and with a desire and purpose of thrusting himself into an office from which he had been rejected by the board of education, induced the board of county commissioners of Summit county, without notice to the defendants, to have said board of commissioners appoint him as such superintendent, and that the appointment so made by the board of county commissioners was without the authority of law, and wholly null and void. That whatever order the county commissioners may have made, was the result of false and wrongful representations on the part of the relator.

They further aver that whatever claim for services plaintiff may have, as superintendent of and teacher in the public schools at Cuyahoga Falls, he has a plain and adequate remedy in the ordinary course of the law for such claim, and that in no case has he any right to invoke the highest judicial writ known to our constitution and laws, namely, the writ of mandamus.

A separate answer has been filed by McCon Moore, one of the defendants, in which he admits he is a member of the board of education of the said village, and clerk of the board; admits that the facts set forth in the petition are true, and says he is ready and willing and has at all times been ready and willing to comply with the prayer of the petition.

George Patterson, another of the defendants, as a member of the board, has also filed his separate answer of the same import.

The plaintiff has filed a reply taking issue with the allegations of the answer. A supplemental answer is also filed in the case by Charles H. Howland, one of the defendants, in which he avers that he is not and has not been president of the said board of education, since the third Monday of April, 1896, and that the office of president has been vacant since that date, and that said McCon Moore is not and has not been clerk of said board since the date aforesaid; that the office of clerk is also vacant.

Upon the filing of said petition, the court issued an alternative writ of mandamus.

And the application is now made, on final hearing, for a peremptory writ of mandamus compelling the said board of education of Cuyahoga Falls, and the president and clerk thereof, to issue a proper order on the treasurer of said board to pay the amount due the relator for his services as superintendent.

It appears from the pleadings and testimony in the case, that the board of education of the village of Cuyahoga Falls, have, for more than ten years last past, employed a superintendent of the schools of that village; that there are some thirteen schools conducted under the control of the board of education; the schools are graded; that the board consists of six members, duly organized, with a president and clerk; that for more than ten years last past, the relator has been in office, as the superintendent of schools at that place; that his duties consisted in a general supervision of all the schools, as well as devoting about one-half of his time to teaching the pupils in the different schools.

Up to the month of May, 1895, no question appears ever to have been made in regard to the necessity of having a superintendent; there was no division or trouble in the board in that respect, but at the meeting of the board of education May 6, 1895, as appears by the public record, it was moved and seconded to proceed to elect a superintendent for the ensuing year; motion was duly passed, and the relator's name was duly presented as a candidate for the coming year at a salary of $1100. The motion was lost, as appears by the record, three members voting for, and three members against the resolution.

At the meeting of May 20, 1895, it appears from the record, that applications for position of superintendent were made and placed on file, but it does not seem that any vote was taken.

At the June meeting 1895. the relator's name was again placed in nomination for superintendent at a salary of $1,100, but the board failed to elect, there being three members for, and three against the proposition, and thereupon the name of W. H. Webb was placed in nomination for superintendent; this was also lost, the vote being exactly even for and against his employment.

At the meeting of July 17, the board made another effort to elect a superintendent, and R. A. Liesy's name was proposed, but there was no election, there being three for and three against the proposition to employ Liesy.

Nothing further was done by the board touching a superintendent; in fact, there existed in the board what is called a "deadlock," and the fall term of school for 1895, commenced on the 3rd day of September of that year, and it appears on the records of the county commissioners that on Wednesday, the 4th day of September, the board of county commissioners passed the following resolution: "Whereas, the Board has been advised that the youth of school age in the Village of Cuyahoga Falls have not been provided with sufficient school privileges and that they have not received an equitable share of school advantages and that said schools have not been continued the customary length of time, by reason of the failure and neglect on the part of the Board of Education of the Village of Cuyahoga Falls, to select a competent superintendent for said schools, and said board being satisfied upon hearing the evidence that the foregoing statement is true—that the youth of school age in the village district of Cuyahoga Falls have not been provided with sufficient school privileges and have not been provided with an equitable share of school advantages and said schools have not been continued the usual and customary period, by reason of the failure and neglect of the said Board of Education of said village district to elect a superintendent of schools for said village district, the said Board of County Commissioners proceeded to do and perform the duties and acts of the Board of Education in the premises, and on motion of Commissioner Nesbit, seconded by Commissioner Brewster, Mr. F. Schnee was duly appointed and elected superintendent of the schools of the village of Cuyahoga Falls, at a salary of $1,100.00 per year, payable in ten equal monthly payments of $110.00 per month, Commissioners Steel, Nesbit and Brewster voting "aye."

And the relator thereupon, pursuant to the above appointment, entered upon the discharge of his duties as superintendent, and has ever since been engaged in teaching and superintending the schools of Cuyahoga Falls.

At the meeting of the board of education of October, 1895, the matter of the payment of teachers and superintendent came up, and objection being made to the payment of the superintendent's salary, on the ground that he had been elected by the county commissioners, motion was made and seconded that his salary be paid; this was lost, as the board was again evenly divided. Motion was then made and carried, to pay all the teachers not including the superintendnt, and this motion prevailed.

At the meeting of October 28, 1895, the board of education passed a resolution to employ Miss Elsie Marsh, as assistant teacher, at $25 per month, to be placed in such position as the superintendent might think advisable.

At the meeting of November 4, 1895, it was moved that as the relator had been appointed superintendent for one year, that he be accepted by the board, and that he receive his pay as had been the custom in former years. The motion was seconded, three members voted for the resolution and two against, motion was declared lost, presumably on the ground that although it received a majority of the votes cast, yet it required a majority of all the members of the board. It also appears that at the meeting of November 4th, the relator as superintendent made his monthly report to the board of education, and on motion to accept

the report, and after discussion, the roll was called and vote taken, and the record shows that the motion prevailed.

The board having thus refused to pay the relator any sum whatever upon his salary as superintendent, it further appears that on the 11th day of November, 1895, the board of county commissioners of Summit county, at a regular meeting, passed the following resolution:" On motion of Commissioner Brewster, seconded by Commissioner Nesbit, an order in the amount of two hundred and twenty (§220) dollars in favor of F. Schnee, was drawn against M. D. Card, Treasurer of the Board of Education of the village of Cuyahoga Falls, of which order the following is a true copy. Copy of order: "Commissioner's Office, Summit County, Ohio. Akron, Ohio, November 11th, 1895. To M. D. Card, Treasurer of the Board of Education of the Village of Cuyahoga Falls:

"Please pay to the order of F. Schnee, two hundred and twenty (§220) dollars, salary for the months of September and October, out of the school funds in your possession as treasurer. Signed: T. A. Steel, Jas. Nesbit, J. H. Brewster, Commisioners of Summit Co."

The board of education of Cuyahoga Falls, refused to recognize this order in any way, and the treasurer of the board, when the order of the county commissioners was presented, refused to pay the same for the reason that he could not pay any money with out an order signed by the president and clerk of the board of education.

No question was made in the pleadings, or upon the testimony, touching the amount of compensation which the relator was to receive; and the question presented to this court upon the pleadings and testimony, is whether the facts under the law, present a case for the issuing of a writ of mandamus to compel the payment of the relator's salary for the months of September and October, as superintendent of the Cuyahoga Falls schools, or, in other words, is the relator entitled to the relief claimed.

In behalf of the defendants, with the exception of those who have answered admitting the facts stated in the petition, it is claimed, that the writ of mandamus cannot issue,

First.—As against the officers of the board of education. because they are not in a position to act until the board of education acts.

Second.—As against the board of education, because the board has already acted, exercising its discretion and judgment. And,

Third.—Because the relator has an adequate remedy at law.

In regard to the first ground of objection, viz: that the officers, the treasurer, president and clerk. cannot act until the board acts, the prayer of the petition is, that the board shall act; that is to say, that it shall pass a proper order to pay the amount due the relator; that the proper officers of the board shall sign it, and then that the treasurer. to whom it is directed, shall pay it. And it seems to me that it would not be just or reasonable that these officers should be permitted to shift the responsibility from one to the other, and defeat the relator's right to recover compensation, provided that the relator is in fact entitled under the law to his payment out of the treasury of the board; and it seems to me that all these questions made by the defendants, turn very largely upon the effect to be given by the court to section 3969 of the Revised Statutes, under which the county commissioners on the 4th day of September, appointed the relator superintendent of the schools and fixed his salary.

This section, without quoting the whole of it, provides that if the board of education of any district, fail in any year, to do certain things, and among others, fail to provide an equitable share of school advantages, that upon being advised and satisfied thereof, the county commissioners shall do and perform any and all of said duties and acts in as full a manner as the board of education is by this title authorized to do and perform the same.

My construction of this section of the statute is this: That it does not legislate the board of education out of existence, so to speak, and that thereafter the county commissioners are to exercise all the functions and discharge the duties of any board of education; but the purpose clearly is to provide for just such a contingency as has arisen in the Cuyahoga Falls board of education, and to the end that the schools and the education of children shall not suffer by reason of any such contingency, and that where a board of education fails to do or neglects to do any of the things coming within the letter and spirit of this statute, that then the commissioners of the county may be appealed to, and that upon being satisfied, the commissioners may do the very thing which the board of education has failed and neglected to do, and that the act or order so made or performed by the commissioners of the county, is to all intents and purposes, the same as if it had been the act of the board of education. In other words, the commissioners having elected the relator as superintendent of schools, and fixed his salary for the ensuing year, it becomes in legal effect, the act of the board of education of Cuyahoga Falls. and he is entitled to his compensation precisely the same as if there had been no split or division in the board of education, and that the board had elected him superintendent.

And this brings me to the question which it seems, lies at the very threshold of this proceeding, and that is, was the relator's appointment as superintendent and the fixing of his salary, a valid and binding election?

Now what are the facts upon this? It is clear to my mind, that the board of education had not determined to abolish the office of superintendent of schools, or to manage their schools without a superintendent; in short, their records show that they have had a superintendent almost without interrup-

tion, for many years, and that they made repeated efforts in May, 1895, to elect a superintendent, and that failing to elect the relator, they tried to agree upon others, but that the board was utterly unable to agree upon any one after they had had quite a number of months to reconcile their differences in the interests of the schools, and that in fact nothing was done until after the opening of the fall term of 1895. So that to my mind this whole controversy grew out of a difference of opinion between the members of the board in regard to the election of the relator, and not in regard to the election of a superintendent, or the necessity for one.

And this being the case, it appears from the record that a number of persons at Cuyahoga Falls, interested in the schools, applied to the county commissioners for the appointment of a superintendent, the board having failed to elect one, and there being no prospects whatever of an election of one.

This action of the county commissioners is attacked by the defendants on the ground that it was made without any authority, and without any notice to the board of education, and that it was hastily and inconsiderately made in the interest of the relator in this case.

It is not necessary that I should consider the evidence upon that proposition, for this reason; the law makes no provision for the issuing of a summons or any notice to the members of the board of education, as a preliminary step to the doing of an act which the board ought to do but has failed and neglected to do. It was undoubtedly the province of the general assembly to determine upon whom notice should be served, if any notice was deemed necessary; but no provision whatever appears to have been made in that regard, and all that appears in this section, as requisite; is that the commissioners of the county to which the district belongs, upon being advised and satisfied thereof, may do so and so. The general assembly having failed to provide how or upon whom or in what manner notice shall be served, before the commissioners can take action, it is not for this court to say what notice should be given. It must, however, be presumed, so far as this court is concerned, that the commissioners of the county, being public officers, have performed the duties enjoined, upon them by the law, under which it is shown they were assuming to act. It must be presumed in favor of the correctness of their proceeding, and the proper discharge of their duty, that they were properly advised and satisfied that the board of education of Cuyahoga Falls had neglected to elect or appoint a superintendent, and that such a superintendent was necessary to the prosperity and well being of the schools of that place, and to the granting of equal advantages to the pupils therein. So far as this order or action of the county commissioners is concerned, it does not appear that any one ever appealed from it, or that any legal exception was taken thereto, but it stands in all respects entitled to the presumption

which courts always recognize in favor of the correctness of the proceedings of inferior courts, boards or tribunals, and where such inferior court renders a judgment or an award, or a decision is made by an inferior board or tribunal, it will always be presumed, unless the contrary is clearly shown, that a proper state of facts was shown or exhibited in evidence, to warrant the judgment, decision or award arrived at.

The decision of the Supreme Court of this state, in the case of the State ex rel. Wetmore v. Stewart, 26 Ohio St. 216, is in point, I think, on this proposition.

But in respect to the appointment of the relator by the board of county commissioners, it having been shown to the court by the records of that body, that the question of the election of the relator having been presented to that body, and the commissioners having acted upon it, under and by virtue of the section named, I do not think that this court can go back of that record, and disregard the action on the ground that no sufficient notice was given to the defendants; nor do we think the court can look into the motives of the parties who brought the matter to the notice of the county commissioners; and I think this is especially true in a case like the one at bar, where the general assembly appears to have given this power to the commissioners, without providing for the service of summons or notice upon the parties interested.

My conclusion therefore, upon this proposition is, that the action of the board of county commissioners in appointing the relator superintendent of the schools for the period of one year at the salary stated, for the purposes of this hearing, must be regarded as a lawful appointment, and that he is entitled to his compensation.

I do not consider this a case in which the court is attempting, by a writ of mandamus to control the exercise of discretion on the part of the board of education, and I recognize the law to be, that the exercise of discretion, rightfully existing in any board or tribunal, cannot be controlled by the issuing of a writ of this description. Doubtless the said board of education could have elected anybody else superintendent of the schools, without let or hindrance, from any one but the members of that board; and it is equally true that they could have determined not to elect a superintendent, or perhaps to abolish the office entirely and conduct their schools simply by the employment of teachers for each school, but this is not what the board was doing. It is too plain to admit of a doubt, that the members of this board were divided touching the employment of the relator, and that as the board was constituted, it was powerless to do anything in that regard, and, in fact, did nothing, and but for the fact that the law has provided for such contingencies, and the fact that another tribunal under that law has assumed to act, and has acted and made choice of a superintendent, there would be no power in this court, by a writ of mandamus, to com-

pel the board of education of Cuyahoga Falls to elect the relator or any other person, superintendent of schools, and under the authority of this section, 3969, and the fact that the commissioners of the county have taken cognizance of the case and passed their judgment upon it, elected a superintendent and fixed his salary, so far as this court is concerned, it stands precisely as if the board of education had elected the relator, and that he had, pursuant to his selection to this office, rendered the services required, but that the board had refused to pass an order for his pay.

It seems to me furthermore that the board of education can hardly complain of the action of the commissioners, under the circumstances. The relator, after the appointment on September 4th, attended all the meetings of the board of education and at one of those meetings they elected an assistant teacher, and by a clear majority vote of the members of that body, directed him to place her in such position as in his judgment she was qualified to fill. Here was a clear majority vote, recognizing him and confiding to his judgment and· discretion the needs of the school and the qualifications of the teacher, and the position that this assistant teacher should occupy.

It cannot be overlooked also that subsequent to this appointment by the commissioners, I think at the October meeting, the relator made his monthly report, as superintendent of the schools for the preceding month, and the record shows that the report was received and accepted; the minutes of the meeting show that a clear majority of the members of the board voted in favor of it, and that the motion prevailed.

It is further claimed by the defendants, that the relator in this case has an adequate remedy at law, and that therefore this writ should be denied.

It is doubtless clear as a legal proposition, where the party has an adequate remedy at law, that he cannot invoke the aid of a writ of mandamus, which is regarded as one of the extraordinary remedies which the law affords.

It is said the relator could bring suit against the board of education to recover a judgment, and recover it in the ordinary way.

Now to answer this claim, suppose that there never had been any controversy in the board of education, in regard to the employment of the relator, but that in fact he had been regularly employed, all the members of the board voting for him, fixing his salary at $1,100 a year; suppose after two month's service, he had applied to the board of education for an order on the treasurer for two months' pay under his contract, and the board had refused to pass an order, will any one say that it wouldn't be the proper office of a writ of mandamus to compel the board of education to issue the proper warrant for his compensation? I think not. Suppose further, that the board of educa-

tion had passed the order directing that an order be drawn on the treasurer and signed by the president and clerk and paid by the treasurer; suppose that these officers severally or altogether, had refused to perform the ministerial act necessary for them to perform in order to draw the order from the treasury, will any one say it would not be the proper office of a writ of mandamus to compel the discharge of this duty?

The view which I take of this case is, that under the action of the county commissioners in the employment of the relator, pursuant to the section of the statute referred to, it appears in all respects as if the relator was here under a proper employment by the board of education of Cuyahoga Falls and upon a showing that he had performed the work assigned to him, and had taught the schools as provided for, and that the board of education had refused to draw the proper order. This, I do not consider in the light of controlling a discretion. I regard it more in the light of a clear duty,— ministerial, and not merely discretionary in its character, and to say that in such case a teacher or a superintedent having performed all his duties, (and in this case, no complaint appears whatever,) that he should bring a suit before some justice of the peace or other court, and obtain a judgment, and then collect the judgment in the ordinary way, would not in my opinion be a plain, adequate remedy at law.

I think the case of the State ex rel. Robertson v. The Board of Education of Perry township, reported in the 27th Ohio St. 96 is clearly in point in this case, and to the same effect is the case of Case v. Geo. Wresler, Treasurer of Scott township, Brown county, 4th Ohio St. 561.

It is shown that the board of education levied the money; that it was duly collected, and that the sum is now in the hands of the treasurer for the payment of the teacher and for the payment of the relator, and all that is necessary is, that it should be drawn out in some manner recognized by law.

In this connection, I may quote the language of Judge Stone in the case of the State of Ohio ex rel. Mix v. City of Cleveland. This was an application to the court for a writ of mandamus to recover compensation due to certain employes of the board of directors of the house of refuge and correction. Among the objections urged in that case, was the claim that mandamus was not the proper remedy, and that the claimants had an adequate remedy at law. Judge Stone says: "On the other proposition, as to whether mandamus is the appropriate remedy, very little need be said. I have no doubt that it is an entirely appropriate remedy under the circumstances. It would be far from being an adequate remedy that every month when the salary became due, a large number of claimants, each of them must have his suit at law for the recovery of his salary, and still to perform services with a likelihood of being without such compensation for months, and perhaps

years, awaiting the result of decisions either in this or higher courts. It would be ridiculous and absurd to hold that these claimants must be remitted to any such remedy as that; especially when the employment and services are admitted, and it being only a question of method of payment, it would be neither appropriate nor adequate. We think the writ of mandamus is the appropriate remedy where an officer refuses to draw a warrant when it is clearly his legal duty to do so.''

It is the judgment of the court in this case, that mandamus is the proper remedy. and that the plaintiff, the relator, is entitled to the relief prayed for, and a peremptory writ is allowed, compelling the board of education of Cuyahoga Falls to grant the proper order, and that the clerk and president of the board sign it in the proper manner, and that upon presentation to the treasurer of the board, that he shall pay it.

Messrs. Sauder & Rogers and Charles Baird, for Plaintiff.

Messrs. Howland & Prior and Grant & Sieber for Defendants.